*Judge Pauley*

'09 CIV 7961

NOURSE & BOWLES, LLP
Attorneys for Plaintiff
SJJ MARINE PTE. LTD.
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200
jpare@nb-ny.com



RECEIVED
SEP 16 2009
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SJJ MARINE PTE. LTD.,

          Plaintiff,

    - against -

ASTHA INFRASTRUCTURE LIMITED,

          Defendant.
------------------------------------------------------------X

09 Civ.    ( )

**VERIFIED COMPLAINT**

    Plaintiff, SJJ Marine Pte. Ltd. ("Plaintiff"), by its attorneys, Nourse & Bowles, LLP, complaining of the above-named defendant, Astha Infrastructure Limited ("Defendant"), alleges as follows:

    1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. § 1333.

    2.    At all material times, Plaintiff was and now is a corporation or other business entity organized and existing under the laws of Singapore with an office and

place of business at 101A Upper Cross Road, No. 8-18 People's Park Centre, Singapore 058358.

3. At all material times, Defendant was and now is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business at No. 154, 2nd Floor, 1st Main Road, 1st Block, Rajajinagar, Bangalore, India 560 1010.

4. Pursuant to a charter party fixture note, Plaintiff, as disponent owner chartered the vessel M/V SANKO KING or substitute to Defendant, as charterer for a voyage from 1 or 2 safe berths, one safe port Krishnapattama, East Coast India, to 1 safe berth in China at Charterer's option. The charter provides for resolution of disputes between the parties by arbitration in Singapore with English law to apply and Plaintiff will soon be demanding arbitration in Singapore for the claim described below.

5. Under the charter party fixture note Defendant was obliged to load 50,000 metric tons, 10% more or less at owner's option of iron ore fines, in bulk, with the vessel tendering for loading between September 4-9, 2009 and with Defendant paying freight at the rate of $17 per metric ton and with Defendant also paying for loading, stowing, trimming and discharge. The charter further specifically provided that the "Shippers/Chatrs to ensure that all cargo is reading in the jetty."

6. The vessel duly arrived and tendered notice of readiness for loading on or about September 6, 2009.

7. Defendant, however, in breach of its obligation under the charter, failed to provide any cargo for loading and advised Plaintiff to withdraw its vessel, as it would not provide cargo for loading due to a dispute between Defendant and its cargo supplier.

8. By reason of the foregoing circumstances, Defendant failed to ship any cargo and Plaintiff is entitled to damages consisting of deadfreight and/or lost freight in the amount of $935,000 based on Defendant being required to load 55,000 metric tons of cargo, at Plaintiff's option, at a freight rate of $17 per metric ton.

9. Defendant has therefore breached its contract with Plaintiff and currently owes to Plaintiff the principal amount of $935,000.

10. Costs, including solicitor's fees and arbitration expenses are routinely awarded to the successful party in Singapore arbitration and Plaintiff claims the total of $100,000 representing a reasonable estimate of the likely solicitor's fees and arbitration costs to present and determine Plaintiff's claim in Singapore.

11. Interest is also routinely awarded to the prevailing party in Singapore arbitration on the principal amount of Plaintiff's claim and Plaintiff claims interest at 6% for a period of 2 years, or the sum of $112,000, the said period of time being a reasonable estimate for final resolution and payment of the claim.

12. By reason of the foregoing premises, Defendant owes Plaintiff the sum of $1,147,000 ($935,000 + $100,000 + $112,000) as best as can presently be calculated.

13. Defendant's website states that it is "actively involved in the export of iron" and it "has been extending its business to the export of iron ore from India to various international locations" and it "plans to continue its exports of large amounts of Iron

Ore." As the charter party fixture note in this case shows, Defendant pays for its international export of iron in U.S. dollars. Based on Defendant's involvement in international exports, it is anticipated that Defendant has or will have funds that pass through New York in international wire transactions since dollar denominated wire transfers typically pass through New York intermediary banks.

14.   Defendant cannot be found within the district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, but, for reasons outlined, Defendant is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire or credits including but not limited to electronic fund transfers in the hands of garnishees in this District.

WHEREFORE, Plaintiff prays:

    A.   That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

    B.   That, since Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, this Court issue an order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, attaching all of Defendant's tangible or

intangible property owing to or otherwise the property of the Defendant up to the amount of $1,147,000 to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Admiralty Rule B, answer the matters alleged in the Complaint.

    C.    That such property attached pursuant the Process of Maritime Attachment and Garnishment remain sequestered to serve as security for the payment of Plaintiff's claims; and

    D.    That, following the attachment of sufficient funds to secure Plaintiff as prayed herein, that the action be stayed pending resolution of the merits of the claim in Singapore in accordance with the governing contract.

    E.    That Plaintiff have such other, further and different relief as may be just and proper.

Dated: New York, New York
September 16, 2009

NOURSE & BOWLES, LLP
Attorneys for Plaintiff
SJJ MARINE PTE. LTD.

By: _____
ARMAND M. PARÉ, JR. (AP-8575
One Exchange Plaza, At 55 Broadway
New York, NY 10006-3030
(212) 952-6200
Email: jpare@nb-ny.com

5

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF NEW YORK         )

ARMAND M. PARÉ, JR., being duly sworn, deposes and says:

I am a member of the firm of Nourse & Bowles, LLP, attorneys for plaintiff herein and I have read the foregoing Verified Complaint and know the contents thereof and that the same are true to my own knowledge, except as to the matters herein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The source of my information is documents, records and other information submitted to me on behalf of the plaintiff.

This verification is made by me because plaintiff is a foreign corporation.

_____
ARMAND M. PARÉ, JR.

Sworn to before me this
16 day of September, 2009

_____
Notary Public

MARY T. BANNON
Notary Public, State of New York
No. 01BA4785995
Qualified in New York County
Commission Expires February 28, 2010

6

# Exhibit A

Page-1 jpg (2480x3508x16M jpeg)

### FIXTURE NOTE

ON THIS DAY THE 3RD OF SEPTEMBER 2009 IT IS MUTUALLY AGREED BETWEEN THE OWNERS SJJ MARINE PTE LTD AND THE CHARTERER'S ASTHA INFRA TO LOAD THEIR CARGO AS PER THE FOLL. TERMS AND CONDITIONS.

MV.SANKO KING OR SUB. OWNERS TO DECLARE PERFORMING VESSEL WITHIN 24HRS AFTER FIXING

Built/2008, Flag/Liberia, Class/NK
56,678 MT DWT on 12.735 m SSW
LOA 190.00 m, Beam 32.26 m
GRT 31,552 NRT 18,762
5 holds/5 hatches
30 MT x 4 Cranes
Grain Capa 72,111 m3
Hatch Size (l X B)
No.1 , 14.56 m x 18.60 m
No.2-5 , 20.93 m x 18.60 m
Main Engine. DU-sulzer 6RT-flex50
MCR  8,890 kw x 116 rpm
NOR  7,110 kw x 107.7 rpm
Bunker Specification.
IFO (380 CST) RMG-380 (ISO 8217-2005)
MGO or MDO  DMA or DMB (ISO 8217-2005)
Charterers warrant to supply bunkers to vessel with above specifications
Vessel has 4 units with capacity of about 12 cbm of grabs on-board.
Owners are not responsible for capacity of grabs on board.
Speed/Consumption
Laden : about 13.9 knots on about 33.5 mt ifo + about 0.1 mt mdo/mgo
Ballast : about 14.7 knots on about 33.5 mt ifo + about 0.1 mt mdo/mgo
In port consumption
Working : about 5.0 mt ifo + about 0.1 mt mdo/mgo
Idling : about 2.5 mt ifo + about 0.1 mt mdo/mgo
Above speed and consumption are given basis good weather condition
i.e. wind force Beaufort scale Maximum 4 and Douglas sea state 3,
no negative influence by swell/adverse current.




Page-2.jpg (2480x3508x16M jpeg)

ALL DETAILS ABOUT W-O GTEE

OWNERS (DISPONENT):   SJJ MARINE PTE LTD.
                      SJJ MARINE PTE LTD
                      101 A, UPPER CROSS STREET #08-18
                      PEOPLE'S PARK CENTRE, SINGAPORE 0S83S8

CHARTERERS      . ASTHA INFRASTRUCTURE LIMITED
                2ND FLOOR,1ST MAIN ROAD ,
                1ST BLOCK,RAJAJINAGAR ,BANGALORE-10

1.QTY/CARGO: IRON ORE FINES IN BULK, 50000, 10 PCT MORE IN OWNS OPTION
(MOLOO).

2.LOADING PORT: 1-2 1 SP KRISHNAPATTAM, EC INDIA. OWS/VSL TO PROVIDE GEARS
WITH SUFFICIENT POWER TO LOAD/CARGO.IF GEAR FAILS,TIME TO COUNT PRORATA AND
OWNERS TO ARRANGE SHORE CRANE FOR LOADING
ON OWNS TIME AND EXPENSES.

3.DISCHARGING PORT: 1SP 1SB NORTH CHTRS OPTION
  CHARTERERS TO GTEE NO DRAFT RESTRICTION FOR THE VESSEL.
  DISPORT TB DECLARED UPON COMPLETION OF LOADING.

4- LAYCAN:  4TH-9TH SEPT 2009

5-L/RATE : 10,000MTPWWDSHINC

6-DISC/RATE: 12,000MTPWWDSHINC

7-FREIGHT RATE :  USD 17.00  PMT FIOST BSS 1/1.

8- 100 PCT OCEAN FREIGHT IS TO BE PAYABLE IN US DOLLARS TO OWNERS' NOMINATED
BANK ACCOUNT WITHIN  5 BANKING DAYS AFTER COMPLETION OF LOADING AND SR BL
MARKED"FRT PAYABLE AS PER CP". FRT PREPAID BL, IF REQUIRED WILL BE RELEASED
ONLY AFTER OWNERS RECEIPT OF BANK SLIP OF FRT PAYMENT. ANY LATE PAYMENT OF
FRT WILL INCURR PENAL INTEREST AT 14 PCT.





Page-3..jpg (2480x3508x16M jpeg)

9- ALL PAYMENTS TO BE MADE TO:
Freight Beneficiary - SJJ MARINE PTE LTD
Bank details:
KOREA EXCHANGE BANK SINGAPORE BRANCH
SWIFT CODE: KOEXSGSG
USD ACCOUNT NO : 11-02660
IN FAVOUR OF: SJJ MARINE PTE LTD
A/C WITH DEUTSCHE BANK TRUST CO. AMERICAS, NEW YORK
SWIFT CODE - BKTRUS33

10-FULL FREIGHT IS TO BE DEEMED AS EARNED UPON COMPLETION OF LOADING,DISCOUNTLESS AND NON-RETURNABLE WHETHER SHIP AND/OR CARGO LOST OR NOT LOST.

11-DEMMURRAGE RATE USD 15000 PER DAY OR PRO RATA FOR ALL TIME LOST AT LOAD AND DISCHARGE PORT. DESPATCH HALF OF DEMMURAGE TO BE PAID TO CHARTRS IF ANY TIME SAVED AT LOAD OR DISCHARGE PORT

12-LOADPORT DEMMURRAGE IF ANY TO BE SETTLED WITH FREIGHT AND DISCHARGE PORT DEMMURAGE WITHIN 7 DAYS OF COMPLETION OF DISCHARGE

13-FREE OF OVER AGE PREMIUM

14- N.O.R TB TENDERED AT ANY TIME DAY OR NIGHT SHINC BENDS 12 HRS TURN TIME AT THE LOAD AND DISH PORT AFTER TENDERING NOR.

15- AT LOADING AND DISCHARGING PORT, LAYTIME TO COMMENCE 12 HRS AFTER TENDERING OF NOR.

16- NOTICE OF READINESS TO BE TENDERED BY MASTER THRO AGENTS BY CABLE/TLX/FAX TO SHIPPERS/CHTRS/RECVRS. SHOULD FREE PRATIQUE NOT BE GRANTED FOR REASONS RELATED TO VESSEL, CREW, INVALID CERTIFICATES, ETC. THEN TIME SHALL NOT COUNT UNTIL FREE PRATIQUE IS GRANTED AND VESSEL IS IN ALL RESPECTS READY TO LOAD/DISCHARGE HER CARGO.





Page-4.jpg (2480x3508x16M jpeg)

17- OWNERS NOMINATED AGTS AT LOAD PORT - REVERTING AND CHRT(RECEIVER) TO NOMINATE AGT AT DISCHARGE PORT, SUBJ TO REASONABLE P/OA (REVERTING)

18- VSL IS GUARANTEED SUITABLE FOR GRAB DISCH. NO CARGO TO BE LOADED IN OR ON TOP OF DEEP TANKS NOR IN BRIDGE SPACES, NOR IN ANY OTHER PLACES ACCESSIBLE FOR DISCHG BY MEANS OF MERCHANICAL GRABS. SHOULD NEVERTHELESS ANY CARGO BE LOADED BY VSL IN PLACES NOT ACCESSIBLE TO GRABS, ANY TIME LOST AND EXTRA EXPENSES OVER AND ABOVE THE COST OF NORMAL GRAB DISCHARGE AT DISPORT TO BE FOR CHTRS ACCT. DEEP TANKS, TUNNELS AND ALL OTHER PROVISIONS W/I VSL'S HOLDS ARE TO BE ADEQUATELY PROTECTED AGAINST NORMAL OPERATION OF THE GRAB DISCHARGE, FAILING WHICH OWS TO BE RESPONSIBLE FOR ALL CONSEQUENCES.

19- ANY TAXES/DUES/WHARFAGE ON CARGO AT LOADING PORT TO BE FOR CHARTERERS A/C AND AT DISCHARGE PORT TO BE FOR RECEIVERSA/C

20- ANY TAXES/DUES/WHARFAGE ON VSL/FREIGHT/FLAG/CREW/OWNERSHIP TO BE FOR OWNERS A/C. ALL PORT DISBURSEMENT AMOUNT AT LOAD AND DISCHARGE PORT TO BE PAID BY OWNERS

21- CONGEN B/L FORM TO BE USED

22- VSL SHALL BE IN THE HIGHEST CLASSIFICATION FOR VSL OF THEIR AGE AND TYPE WITH LLOYDS OR EQUIVALENT. VSL TO BE COVERED BY PNI CLUB. OWS SHOULD SEND CLASS AND PNI CLUB CERTIFICATE BEFORE FIXING ON MAINTERM.

23- OWNERS GUARANTEE THAT VSL WILL NOT BE SOLD/SCRAPPED OR REDELIVERED DURING CURRENCY OF THIS CONTRACT.
- OWRS CFM THAT VSL HAS BEEN COVERED UNDER PNI CLUB AND ALL THE CERTS ARE VALID DURING THIS VOY

24- AT L/D PORT, DFT SURVEY TB CARRIED OUT BY AN INDEPENDENT SURVEYOR WITH ACCOMPANY BY MASTR OR C/O. QTTY MENTIONED ON THE BS/L TO BE AS PER DFT SURVEY FIGURES. OWNERS WILL REMAIN RESPONSIBLE FOR ANY CARGO SHORTAGE. DRAFT SURVEY COST TO BE SHARED EQUALLY BETWEEN OWNERS AND CHARTRS.



Page-5.jpg (2480x3508x16M jpeg)

25- UPON VSL ARRIVAL AT LOAD PORT ,IF SHIPPERS UNABLE TO COMMENCE LDG EVEN AFTER 72 HRS. DUE TO NON AVAILABILITY OF CARGO, OWNS HAVE THE RIGHT TO CANCEL THE CP, SAIL THE SHIP AND CLAIM FULL DAMAGES.

26- VSL HOLDS TB DRY/CLEAN READY TO ACCPT CHRS INTENDED CGO BUT ALWAYS SUBJ TO INDEPENDANT SURVEYOR. IN CASE HOLDS NOT APPROVED BY THE SURVEYOR,TIME NOT TO COUNT AS LAYTIME FROM THE TIME OF REJECTION UNTIL ALL HOLD PASS BY THE SURVEYOR . IN CASE OF DISAGREEMENT,AN INEPENDENT SURVEYOR APPROVED BY BOTH PARTIES TO BE NOMINATED AND HIS OPINION TO BE FINAL

27- IN THE ABSENCE OF ORIGINAL BILL(S) OF LADING AT DISPORT, OWNERS CONFIRM TO DISCHARGE THE CARGO AGAINST CHTRS SINGLE LOI IN OWS STANDARD PNI CLUB WORDING,WITHOUT ANY BANK GUARANGEE OR ENDORSEMENT.

CARGO DELIEVERY AGAINST OBL OR BANK GTEE OR BANK ENDORSMENT

28- ARBITRATION TO BE HELD IN SINGAPORE AND ENGLISH LAW IS TO BE APPLICABLE

29- TOTAL COMMISION: 1.25% TO ASTHA + 1.25% TO TSN TO BE PAID BY OWNER UPON RECEIVER FULL O.FRT FROM CHRT.

30- VESSEL TO HAVE ALL THE VALID CERTIFICATES (CLASS AND PNI CLUB/ISPS/ISM/DOC)

31 SHIPPERS /CHARTRS TO ENSURE THAT ALL CARGO IS READY ON THE JETTY . PROOF OF PHYSICAL STOCK IN THE NAME OF THE SHIPPER
TO SHOWN TO OWNERS REF.

32. CHARTRS CONFIRM THAT THEY HAVE VALID L/C FOR THE SHIPMENT

33. THIS FIXTURE TB STRICTLY PRIVATE & CONFIDENTIAL

ALL SUBS. IN ORDER AND VESSEL CLEAN FIXED BASIS ABOVE TERMS

FOR CHARTERERS                       FOR OWNERS
ASTHA INFRASTRUCTURE LIMITED, INDIA   SJJ MARINE PTE LTD., SINGAPORE.